[No. 14970. Department One. January 6, 1919.]

EDWARD J. KIRKLAND et al., Appellants,
v. E. O. DRESSEL et al., Respondents.[1]

FRAUD (4)—EXPRESSION OF OPINION. Representations and assurances by a trustee for creditors, and purchasers from 'it, given to the debtor's parents to whom he was indebted for ' services and money loaned, whereby the parents were induced not to file claims with the trustee, do not constitute actionable fraud, where, at most, they amounted only to expressions of opinion that the business would pay all creditors and leave sufficient to the son to pay them, especially where it seems they were largely actuated by a desire to aid their son by withholding their claims.

FRAUDS, STATUTE OF (1)—CONTRACT TO ANSWER FOR DEBT OF ANOTHER. Oral promises by a trustee for creditors that claims would be paid in full fall within the inhibition of the statute of frauds.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered June 19, 1917, upon granting a nonsuit, in an action for fraud, after a trial to the court and a jury. Affirmed.

Roche & Onstine, for appellants.

Wakefield & Witherspoon (Harry T. Davenport, of counsel), for respondents.

[1]Reported in 177 Pac. 643.

TOLMAN, J.—Appellants brought this action, alleging that, by fraud and deceit of respondents, they were deprived of, or prevented from realizing upon, four different and separate choses in action. The case was tried to a jury, and at the close of appellants' evidence, the trial court sustained a motion for a nonsuit, took the case from the jury, and entered a judgment in favor of respondents as a matter of law, from which judgment this appeal is taken.

Having in mind the rule laid down in *Godefroy v. Hupp*, 93 Wash. 371, 160 Pac. 1056, the evidence, or the reasonable inferences from the evidence offered by appellants, discloses substantially the following facts: Edward R. Kirkland, one of the defendants, and a son of appellants, who are husband and wife, was, on February 6, 1911, and for a long time prior thereto, engaged in the general merchandise business at Metaline and at Metaline Falls, in Pend Oreille county, Washington, and then had assets of the book value of about $25,000, but was heavily involved, owing some $19,000, which apparently he was unable to pay as it matured. On the date last mentioned, he transferred all of his assets by trust deed to the Spokane Merchants' Association, conditioned that the association should take immediate possession, operate the business, or dispose of the same, together with the other assets, at public or private sale, collect or compromise all outstanding accounts, and, after paying the expenses, to distribute the proceeds equally and ratably to the creditors, and after the payment of all the indebtedness in full, reconvey what might remain of the assets to Edward R. Kirkland. At the time this deed of trust was made, Edward R. Kirkland was indebted to appellants in the sum of $500 or $550, being cash loaned to him by his mother, which was evidenced

by a note for $500, dated ten days before the making of the trust deed, secured by a bill of sale of the same date, purporting to transfer to the payee of the note three head of horses therein described, which bill of sale appears not to have been recorded. Also, at the time of the making of the trust deed, Edward R. Kirkland was indebted to appellants in the sum of $2,100 for fourteen months wages earned by his father, who had been in his employ during that length of time under an agreement that he should receive $150 per month for his services, no part of which, it is claimed, was ever paid. The note indebtedness was shown on the books, but the indebtedness for services was not so shown.

Respondent Leggett was an adjuster employed by the Merchants' Association, and went to Metaline Falls for the purpose of taking an inventory of the business so transferred, and to arrange for the management and operation of the same, and at various times later visited the place where the business was carried on, for the purpose of overseeing and checking up the books and reporting conditions to the association. Respondent E. O. Dressel was employed by the association as manager of the mercantile business so turned over to it, and had personal charge and direction of the same under Leggett. Shortly after the making of the trust deed, appellants informed Leggett and Dressel of their claims against their son, Edward R. Kirkland, and, according to appellants' testimony, Leggett and Dressel then advised that the claims be not presented or then insisted upon, as they were large and if so presented would probably result in the creditors filing a petition in bankruptcy, and apparently respondents Leggett and Dressel said or intimated that, without such presentation, the claims could be paid

out of the business after all other creditors were paid in full, and at or before the time when the remaining assets should be returned to Edward R. Kirkland. Whether relying upon these representations or for other reasons, appellants did not lay claim to the horses described in the bill of sale given to secure the note, but permitted the same to be taken possession of and inventoried by the Merchants' Association. Nor did appellants present either of these claims to the association, or ever make directly to it any claim that they were creditors of Edward R. Kirkland.

By agreement with respondents Leggett and Dressel, appellant Edward J. Kirkland accepted employment by the Merchants' Association at an agreed salary of $90 per month, of which he claims to have drawn not to exceed $40 per month, and this mostly in merchandise from the store. Appellant Edward J. Kirkland so continued in such employ during the three years that the association was in charge of the business, and seems to have rendered faithful services. The third claim or chose in action mentioned in the complaint being the balance claimed to be due for the services so rendered.

It further appears that, in June, 1913, Edward R. Kirkland procured from his mother a loan of $575 (whether she thought she was loaning the money to her son or to the association is somewhat obscure), which money apparently he turned over to respondent Dressel in charge of the business for the Merchants' Association, but for just what purpose does not clearly appear, although there is some testimony to the effect that it was needed to make up a sufficient sum to pay an expected or promised dividend to creditors. At the time of obtaining this $575, Edward R. Kirkland

gave to his mother as security therefor a memorandum in writing, as follows:

"Metaline, Wash., June 14/13.

"This is to certify that I, E. R. Kirkland, have this day sold to Mrs. Sarah J. Kirkland, one black team of horses and wagon and one yoke cattle about 5 years old for the sum of five hundred seventy-five dollars ($575).          E. R. Kirkland."

Apparently the property mentioned in this memorandum was then in the possession of the Merchants' Association, claimed by it under its trust deed, all of which was well known to appellants; and the reasonable inference is that it was intended to take effect and transfer title to Sarah J. Kirkland when all of the other creditors should have been paid in full and the remainder of the property returned to Edward R. Kirkland. This item constitutes the fourth demand or chose in action set forth in appellants' complaint.

During the three years in which the Merchants' Association was in charge of the business, the indebtedness was reduced from $19,000 to about $7,500, and about February 1, 1914, respondent E. O. Dressel and Edward R. Kirkland went to Spokane, and through the Merchants' Association, and with the assistance of respondent Leggett, induced the remaining creditors of Edward R. Kirkland to accept seventy-five cents on the dollar in settlement of their claims, and to consent to a transfer by the Merchants' Association of all of the assets constituting the trust to respondent E. O. Dressel, in consideration of a cash payment of $5,400, which apparently was sufficient to pay the creditors the amount agreed upon. This purchase price of $5,400 was furnished, one-fourth by respondent E. O. Dressel, one-fourth by respondent Arthur W. Dressel, and one-half by respondent Leggett. No inventory was taken at the time of this sale, and

the conveyance was made direct and without condition to respondent E. O. Dressel. Appellants were informed as to what had taken place, and were given to understand that the transfer would in nowise prevent the payment of their claims, as theretofore understood, out of the business, which would still be carried on in trust in the same manner as before, with the privilege extended to Edward R. Kirkland, at any time within two years, to redeem or repurchase the business by paying $7,500, or an amount equal to the face of the claims of creditors, which in the transaction had been settled at seventy-five cents on the dollar. It is suggested that there was an agreement in writing to that effect, but none was produced or offered in evidence.

After this sale, matters appear to have gone on as before for a period of some six months, when respondent Edward R. Kirkland, having had some domestic difficulties, informed appellants that he was going away and would not make any attempt to redeem the business, and he did go away, and has never returned to the business or made any effort to redeem or purchase it. There is evidence that appellants, or one of them, had conversations at different times following the departure of Edward R. Kirkland, with the respondents, in which they inquired whether the fact that their son had gone away would have any effect on the payment of their claims, and received more or less general assurances that that would make no difference in the situation; and appellants claim that not until September, 1915, were they advised by respondents that they must look to their son for payment of their claims, and not to the business.

It is somewhat difficult to determine upon just what theory appellants hope to recover. The original rep-

resentations as to the probability of bankruptcy proceedings if appellants' claims were insisted upon, and the suggestions or statements that there would be enough left to pay them after all other creditors were paid in full, were clearly expressions of opinion only, and that, too, upon subjects of which appellants had equal knowledge, and upon which their own judgment should have been as good as that of respondents. Clearly these statements or representations do not constitute actionable fraud.

The claim for services rendered to the Merchants' Association had accrued at the time of the sale of the assets to the respondents, and appellants knew of such sale at the time it occurred. They were then privileged to present their claim to the association and demand their money, or to withhold it in the hope that thereby they might aid their son to redeem the business. The representations of respondents as to this matter do not appear to have gone beyond the statement that the son still had the same right as before to redeem the business, and there is no showing that such statements were false in any particular. This is also true of the $575 loaned in 1913. Assuming that the loan was, in fact, made to the association, and it was liable for both of these items, if it paid them, the amount so paid would be added to the sum which Edward R. Kirkland would have to pay before becoming repossessed of the business. The most reasonable inference to be drawn from the evidence, however, is that the $575 was loaned by appellants to their son with the expectation that he would repay them after he should have paid off his other creditors and redeemed the business.

There is a good deal of testimony to the effect that respondents, or some of them, gave repeated assur-

ances that all of appellants' claims would be paid out of the business, both before and after the transfer from the Merchants' Association to respondent Dressel, and some evidence that these assurances were repeated after Edward R. Kirkland abandoned the business. However, at the most, these were expressions of opinion only that Kirkland would redeem, or that the business would itself pay out, and they fall far short of being actionable.

Nor can respondents be held upon the theory that they assumed and agreed to pay the debt of another, whether that other be Edward R. Kirkland or the Spokane Merchants' Association, because all of their promises to pay, if there be any such, were oral only and fall within the inhibition of the statute of frauds. Much as we sympathize with appellants in their losses, yet we think the evidence and the reasonable inferences to be drawn therefrom all point to the fact that these losses were occasioned by the desire to assist their son, and their belief that he had the ability and steadfast purpose necessary to enable him to pay off in full his other creditors, redeem his business, and reimburse them. His failure to possess and exercise these qualities, rather than any representations made by respondents, is responsible for the result.

We find no error in the rejection of testimony complained of, nor in the ruling on the motion for nonsuit.

Judgment affirmed.

MAIN, C. J., CHADWICK, MACKINTOSH, and MITCHELL, JJ., concur.