PAPPAS, Bankruptcy Judge,
Dissenting.
I dissent because, in my opinion, the bankruptcy court abused its discretion when it confirmed Debtors’ chapter 13 plan because it applied incorrect legal rules in determining that the plan had been proposed in good faith as required by § 1325(a)(3).[10]
The bankruptcy court concluded in this case that, in performing a good faith analysis, it was precluded from considering that David Welsh receives $1,165 per month in Social Security retirement benefits.[11] The bankruptcy court also decided that, because Debtors were current on their monthly payments to secured creditors, as a matter of law, it would not consider whether it was reasonable for these above-median income Debtors to continue to pay the full amount of all of their secured debts through their chapter 13 plan, even though some of those debts were secured by items that were patently unnecessary to the success of Debtors’ financial reorganization.[12] In these two respects, I think the bankruptcy court erred. Contrary to the majority, I believe we should vacate the order confirming the plan and remand this case to the bankruptcy court to conduct a proper § 1325(a)(3) good faith analysis.
I.
As the majority notes, it is Debtors’ burden to show that all of the § 1325 plan confirmation requirements have been satisfied. Meyer v. Hill (In re Hill), 268 B.R. 548, 552 (9th Cir. BAP 2001). One such requirement is § 1325(a)(3), which requires that Debtors prove that “the plan has been proposed in good faith.” Good faith is not defined in the Code. However, it is the long-standing law in the Ninth Circuit that, when there is a contest about a chapter 13 debtors’ good faith, the bankruptcy court must focus upon whether the debtor’s plan treats their creditors “equitably.” Goeb v. Heid (In re Goeb), 675 F.2d 1386, 1390 (9th Cir.1982).[13] In applying *859 this test, a bankruptcy court “may consider the substantiality of the proposed repayment [to creditors and] must make its good-faith determination in the light of all militating factors.” Id. To do justice in this inquiry, the “bankruptcy courts should determine a debtor’s good faith on a case-by-case basis, taking into account the particular features of each chapter 13 plan.” Id.
The bankruptcy court in this case decided that Debtors’ plan was proposed in good faith, a ruling blessed by the majority. However, in coming to its conclusion, the bankruptcy court did not engage in the sort of unfettered “totality of the circumstances” review mandated by In re Goeb. Instead, the bankruptcy court applied a “not-quite totality of the circumstances” test, and decided it should not consider two highly relevant factors about Debtors’ plan. That was error.
II.
First, the bankruptcy court noted that under 42 U.S.C. § 407(a), Social Security benefits are not “subject to” any bankruptcy law. In re Welsh, 440 B.R. at 843-44. It also observed that, under § 101(10A), benefits received under the Social Security Act are excluded from calculating a debt- or’s “current monthly income” for purposes of determining eligibility for chapter 7 relief under the § 707(b) “means test,” a test incorporated in chapter 13 to fix the amount of a debtor’s “disposable income” under § 1325(b)(2). Id. at 844-46. The bankruptcy court reasoned that it would violate these statutory provisions were it to consider Debtors’ Social Security income in deciding whether they have proposed their plan in good faith. Id. at 849-50. This conclusion is surely incorrect for several reasons.
Despite these statutes, the fact that a debtor receives Social Security income is considered all the time, for many different purposes, in chapter 13 cases. For example, a debtor’s monthly Social Security payments can provide the basis for a bankruptcy court to find that a debtor has “regular income” to be eligible for chapter 13 relief in the first place.[14] Moreover, in considering confirmation of a plan, since a debtor’s monthly Social Security benefits are available to pay living expenses and plan payments, they are also properly taken into account to decide whether, under § 1325(a)(6), “the debtor will be able to make all payments under the [proposed] plan.”[15] In the context of a chapter 13 case, there is no realistic reason to consider a debtor’s Social Security income for some purposes, but to ignore that same income in determining a debtor’s good faith.
That 42 U.S.C. § 407(a) may place Social Security benefits out of the reach of, *860 for example, a hungry chapter 7 bankruptcy trustee trying to assemble funds to distribute to creditors is no justification to disregard the existence of such income in judging a debtor’s good faith in proposing a particular plan under chapter 13. In a chapter 13 case, a debtor’s Social Security benefits are not being garnished, seized, or “subjected to” the reach of creditors. Plainly, consideration of Social Security income does not violate either the letter or spirit of 42 U.S.C. § 407(a). Not surprisingly, then, and contrary to the majority’s conclusion, bankruptcy courts across the country have recognized it is appropriate to consider the existence and amount of a debtor’s Social Security income in performing a chapter 13 good faith analysis.[16]
It is also not significant in judging a debtor’s good faith in a chapter 13 case that Social Security income is excluded by § 101(10A) from the means test calculations in a chapter 7 case, or from the process of determining an above-median income debtor’s plan payment under § 1325(b)(2).[17] While a debtor’s projected disposable income as calculated under § 1325(b)(2) sets a floor for chapter 13 plan payments, these calculations do not constitute a safe harbor, nor dictate whether a debtor could comfortably be paying more to creditors in a particular case.[18]
Like the many other bankruptcy courts that have done so, this Panel should hold that Social Security income is a relevant factor for the bankruptcy court to consider in evaluating a debtor’s good faith under a § 1325(a)(3). If Congress wanted bankruptcy courts to exclude consideration of Social Security benefits under § 1325(a)(3), it could have easily done so expressly, as it did in § 101(10A). It did not, and we should not strain to imply that restriction in reading other, inapplicable statutes. In this case, when the bankruptcy court held that it was constrained from considering Debtor’s Social Security payments, it erred.
III.
The bankruptcy court also held that, since these above median-income Debtors were current on their monthly payments to their many secured creditors, it could not consider whether it was good faith for Debtors to propose a plan that allowed them to continue to pay all of these secured debts in full, regardless of whether it was reasonable under the circumstances for them to do so. In re Welsh, 440 B.R. at 847-49. I disagree with that conclusion. Again, that current payments to secured creditors are deducted in a § 707(b)(2)/ § 1325(b) means test analysis is not reason *861 enough for the bankruptcy court to decline to exercise its conscience in deciding whether, in proposing large plan payments on unnecessary secured debts, the plan treats Debtors’ other creditors equitably.
Here, Debtors should reasonably be expected to propose a chapter 13 plan that retains, and pays the debts secured by, their home[19] and necessary vehicles. But there is nothing in the record to demonstrate that Debtors needed, or that they should pay the debts for, a car their nonresident, physician-daughter drives, two four-wheeler ATVs,[20] or an Airstream travel trailer.
The bankruptcy court erred in approving a plan as “good faith” that allows these high-income Debtors[21] to pay secured creditors to retain unnecessary items. In reaching this conclusion, I join a host of other courts that have decided that, in reviewing the totality of the circumstances, § 1325(a)(3) requires a bankruptcy court to examine the nature and amount of secured debt being paid through a debtor’s proposed plan.[22]
As noted above, the chapter 7 means test calculations incorporated in § 1325(b), and the good faith analysis required by § 1325(a)(3), are distinct plan confirmation requirements. While under § 1325(b), if the trustee objects, above-median income chapter 13 debtors must pay at least their “projected disposable income” to creditors through a plan, Congress did not decide that a plan proposing to pay only that amount might not otherwise fail the good faith test. While a debtor with a large house, several cars, and other “luxury” secured debt, might successfully navigate the means test, § 1325(a)(3) still requires that the debtor treat the other creditors equitably in the plan.[23] In this case, Debtors’ plan pays for recreational vehicles and a car they do not use at the expense of their unsecured creditors. On this record, that’s not fair.[24]
*862 There is also no evidence in the record, nor mention in the bankruptcy court’s decision to explain why, even if these unnecessary assets were to be retained, Debtors’ plan did not propose to “cram down” the secured debts owed on the over-encumbered items, as allowed under § 1325(a)(5)(B).[25] In this regard, the bankruptcy court and this Panel should instead ask how it is good faith for Debtors to use chapter 13 to pay $38,000 for an Airstream trailer worth $23,000, $7,500 for two ATVs worth $5,400, and $19,000 for a pickup valued at $10,000?[26]
IV.
While it may be an amorphous, somewhat subjective standard, at bottom, § 1325(a)(3) is designed to prevent confirmation of inequitable plans. A bankruptcy court simply cannot decide if a plan is proposed in good faith if it declines to consider either that a debtor receives Social Security income, or the nature, amount and reasonableness of the debtor’s proposed payments to secured creditors through a plan. Because the bankruptcy court refused to consider such highly relevant facts as part of the totality of the circumstances in Debtors’ case, it applied an incorrect legal analysis in examining Debtors’ good faith, and abused its discretion in confirming Debtors’ plan. The principles of fairness embodied in § 1325(a)(3) require that we vacate the order confirming the plan and remand to *863 the bankruptcy court to perform a proper good faith analysis of Debtors’ plan.[27]

. In addition to reviewing Trustee's challenges to the bankruptcy court’s good faith analysis under § 1325(a)(3), the majority assumes that Trustee is also appealing the bankruptcy court's decision regarding the amount of Debtors' “disposable income” under § 1325(b)(2). While Trustee’s argument is perhaps somewhat equivocal, I understand his appellate brief to indicate that this is not an issue. Moreover, in its decision, the bankruptcy court noted that Trustee “withdrew the disposable income objection” prior to entry of its decision. In re Welsh, 440 B.R. 836, 841 n. 9 (Bankr.D.Mont.2010). I therefore also decline to join this part of the majority’s opinion because, I fear, it is dicta.

. In re Welsh, 440 B.R. at 850 (holding that to consider Social Security income in a good faith analysis would "[run] afoul of 42 U.S.C. § 407(a),” and would be "duplicative” of § 1325(b)'s “ability to pay” test.)

. In re Welsh, 440 B.R. at 848 (holding that considering plan payments on current secured debts in a good faith analysis ignores that such payments are authorized under the § 707(b)(2) means test). The bankruptcy court reaffirmed this aspect of its ruling in a subsequent decision, In re McHenry, 2011 WL 4625385 at *5-6 (Bankr.D.Mont. Sept. 30, 2011).

. Subsequent decisions from the Ninth Circuit, like Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1224 (9th Cir.1999) and Eisen v. Curry (In re Eisen), 14 F.3d 469 (9th Cir.1994), have embellished upon the Goeb test. However, to be precise, those cases analyzed a debtor’s conduct in filing the chapter 13 case in the first place, as opposed to whether the debtor had proposed a plan in good faith. In apparent recognition that these are distinct confirmation standards. Congress added § 1325(a)(7) to the Code in 2005, which now requires that a debtor also prove that the *859 "filing [of] the petition was in good faith.” Other decisions, both pre- and post-BAPCPA have focused more narrowly on the provisions of the debtor’s proposed plan in determining a debtor’s good faith. See, e.g., Spokane Ry. Credit Union v. Gonzales (In re Gonzales), 172 B.R. 320, 325 (E.D.Wash.1994); Fidelity & Cas. Co. of N.Y. v. Warren (In re Warren), 89 B.R. 87, 90-93 (9th Cir. BAP 1988); In re Frazier, 448 B.R. 803, 812-13 (Bankr.E.D.Cal.2011). Leavitt is instructive in providing one generic tenet for application in any chapter 13 good faith review: to find a lack of good faith, a bankruptcy court need not decide that the debtor is acting with fraudulent intent, ill will directed to the creditors, or that the debt- or is affirmatively attempting to violate the law. 171 F.3d at 1224-25.

. See, e.g., Hagel v. Drummond (In re Hagel), 184 B.R. 793, 797 (9th Cir. BAP 1995); In re Bassett, 413 B.R. 778, 786-87 (Bankr.D.Mont.2009); In re Spurlin, 350 B.R. 716, 721-22 (Bankr.W.D.La.2006); In re Rigales, 290 B.R. 401, 403 (Bankr.D.N.M.2003).

. See In re Upton, 363 B.R. 528, 535 n. 6 (Bankr.S.D.Ohio 2007).

. See, e.g., In re Herrmann, 2011 WL 576753 at *7-8, 11 (Bankr.D.S.C. Feb. 9, 2011); In re Mains, 451 B.R. 428, 434, 436-37 (Bankr.N.D.Mich.2011); In re Thomas, 443 B.R. 213, 217-19 (Bankr.N.D.Ga.2010); In re Upton, 363 B.R. at 535-37.

. See, e.g., In re Devilliers, 358 B.R. 849, 867 (Bankr.E.D.La.2007) ("[SJtrict and technical compliance with the means test does not necessarily satisfy any debtors’ burden of good faith. Determining whether a plan is proposed in good faith requires an analysis of the totality of the circumstances.”).

. Under § 101 (10A), Social Security benefits are excluded when determining under the § 707(b)(2)(A) means test whether a statutory “presumption of abuse” arises in the case of a debtor seeking relief under chapter 7. Interestingly, however, Social Security income would apparently be relevant in determining whether, in a case in which no statutory presumption arises, granting the debtor chapter 7 relief would otherwise be an "abuse” under § 707(b)(3). See In re Calhoun, 396 B.R. 270, 274 (Bankr.D.S.C.2008). To make that decision, the statute requires the bankruptcy court to consider whether “the totality of the circumstances ... of the debtor's financial situation demonstrates abuse.” 11 U.S.C. § 707(b)(3)(B).

. Debtors have significant equity in their spacious home. Under different facts, however, a bankruptcy court should also have a say under § 1325(a)(3) regarding whether a debt- or should be able to retain, and pay for, an expensive house that is completely unreasonable for his or her needs. While this would admittedly involve a subjective analysis by the bankruptcy court, in my view that’s exactly the approach § 1325(a)(3) and the case law mandates, something which BAPCPA could have changed, but clearly did not. While BAPCPA may have constrained the discretion of the bankruptcy courts in some respects, it is doubtful Congress intended BAPCPA as a vehicle for chapter 13 debtors to retain luxury houses subject to large mortgages at the expense of their unsecured creditors.

. The bankruptcy court found that one ATV was needed by Debtors to plow snow on their mile-long driveway in the winter. The only other use cited in the record for the ATVs was for their recreation.

. Debtors’ total monthly income exceeds $9,200.

. See, e.g., In re Kramp, 2011 WL 4002614 at *1-2 (Bankr.N.D.W.Va. Sept. 6, 2011); In re Hicks, 2011 WL 2414419 at *4-7 (Bankr.N.D.Ala. Jun. 15, 2011); In re Daniel-Sanders, 420 B.R. 102, 106-07 (Bankr.W.D.N.Y.2009); In re Spruch, 410 B.R. 839, 843-44 (Bankr.S.D.Ind.2008); In re Martin, 373 B.R. 731, 734-36 (Bankr.D.Utah 2007); In re Hylton, 374 B.R. 579, 586 (Bankr.W.D.Va.2007).

. See In re Williams, 394 B.R. 550, 572 (Bankr.D.Colo.2008) ("[Section] 1325(a)(3) allows for a more subjective analysis of a debtor’s good faith and the totality of the circumstances, even where the debtor has met the mechanical requirements of § 1325(b).”).

. The Utah bankruptcy court aptly described the function of the § 1325(a)(3) good faith requirement as a "smell test" and noted that “[i]t seems fundamentally inappropriate that a debtor might file for bankruptcy relief and obtain a discharge of debt while still enjoying a luxury item such as a recreational ski boat and trailer” and paying unsecured creditors a minimal amount. In re Martin, 373 B.R. at 736.

. The majority would prefer to decline to consider in this appeal that the amount being paid by Debtors under their plan to secured creditors grossly exceeds the value of the collateral securing those claims. The majority argues that Trustee never raised this offensive feature of the plan in his good faith challenge in the bankruptcy court. To me, this approach to review of the bankruptcy court’s decision is flawed for at least two reasons. First, Debtors’ treatment of their secured debts was indeed a key feature of Trustee's objection to confirmation of their plan. Of course, Trustee argued the claims secured by Debtors’ unnecessary assets should not be paid at all through Debtors’ plan. Given that objection, if those creditors aire to be paid, how much they should fairly receive should certainly be fair game for the bankruptcy court, and for this Panel on appeal, when considering Debtors’ good faith. Second, the bankruptcy court had an independent duty to decide whether Debtors' plan satisfied the Code’s confirmation requirements, including § 1325(a)(3), even in the absence of am objection by the trustee. United Student Aid Funds, Inc. v. Espinosa, - U.S. -, 130 S.Ct. 1367, 1381 & n. 15, 176 L.Ed.2d 158 (2010), citing In re Mammel, 221 B.R. 238, 239 (Bankr.N.D.Iowa 1998) ("[Wjhether or not an objection is presently lodged in this case, the Court retains the authority to review this plan and deny confirmation if it fails to comply with the confirmation standards of the Code.”). I question how that duty can be discharged if the bankruptcy court, or this Panel, declines to consider Debtors’ intent to pay secured creditors far more than § 1325(a)(5)(B) would require in connection with the equitable analysis mandated by § 1325(a)(3).

. In a later decision, the bankruptcy court described Debtors' proposed payments under their plan to the unsecured creditors in this case as "minuscule.” In re McHenry, 2011 WL 4625385 at *4 ("This Court, in Welsh, confirmed a plan that permitted the debtors to make payments on secured claims, including a $400,000 home, while making only minuscule payments to general unsecured creditors.”). I agree with this description. Debtors’ plan proposes to pay secured debts, excluding those for the house and one car, totaling about $65,000, while committing to pay their unsecured creditors, that hold claims totaling $180,000, $14,700 over the sixty-month term of their plan. Debtors’ schedules I and J reflect they have net income available each month, after payment of living expenses and secured debts, of $395, which if paid to unsecured creditors, would amount to $23,700 over the term of their plan. If Debtors's plan omitted payments on their Airstream, one ATV, and the car used by their daughter, another $700+ per month, or $42,000, would be available for unsecured creditors.

. "[The] bankruptcy court[] cannot substitute a glance [at some good faith factors, but not others,] for a review of the totality of the circumstances.... [If] the [bankruptcy] court below did not inquire adequately into whether the [debtor] acted in good faith, we must reverse and remand....” In re Goeb, 675 F.2d at 1391.