In re **Walter Allen SLADE and Loetha Delores Slade, Debtor.**

**BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, Appellant,**

v.

**Walter Allen SLADE and Loetha Delores Slade, Appellee.**

**BAP No. EC–81–1020–GLK. Bankruptcy No. 180–01621.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Submitted July 16, 1981.

Decided Dec. 2, 1981.

Robert P. Khoury, Los Angeles, Cal., for Bank of America Nat. Trust and Sav. Ass'n.

M. Nelson Enmark, Fresno, Cal., for appellee.

Before GEORGE, LASAROW and KATZ, Bankruptcy Judges.

## OPINION

GEORGE, Bankruptcy Judge:

This is an appeal from the confirmation, after oral modification, of a Chapter 13 plan of arrangement. We affirm.

## I.  BACKGROUND

The appellant, Bank of America National Trust and Savings Association, is the holder of a default judgment against the appellee, Walter Allen Slade, in the sum of $29,243.28 in principal, $8,131.69 in interest, and $292.00 in attorneys' fees. Some $25,991.60 of the principal amount of this debt resulted from the embezzlement of funds by Mr. Slade while working as an employee of the Appellant.

On September 9, 1980, Mr. Slade and his wife filed a joint petition under Chapter 13 of the Bankruptcy Code. At that time, they filed a plan of arrangement which proposed to pay $135.00 per month to all creditors for two years. Under this plan, unsecured creditors were to receive a total amount of $250.00, which would be divided pro rata in one lump sum. Prior to the confirmation hearing on this plan, the appellant filed an objection to confirmation, prefaced upon an allegation of a lack of good faith on the part of the Slades.

At the confirmation hearing, counsel for the Slades attempted to assuage the appellant's objections by orally proposing an additional year of payments under their plan. This would have given unsecured creditors a dividend of $1,708.15, or less than 5% of the total unsecured claims against the Slades' estate. Despite this oral modification, however, the appellant reiterated its objections. Principally, it contended that the payment of such a small percentage of the total unsecured debt owed by the debtors indicated their lack of good faith, particularly considering that a large portion of these unsecured debt amounts was created by an act of embezzlement and would, therefore, be non-dischargeable in a case under Chapter 7. Nevertheless, the trial court confirmed the Slades' plan, as orally modified.

## II.  ISSUE

The only issue before the panel is whether the bankruptcy judge abused his discretion in confirming the Slades' Chapter 13 plan of arrangement. Implicit in this issue is the question of whether the trial judge's finding that the debtors' plan had been proposed in good faith was clearly erroneous.

## III.  ANALYSIS OF THE FACTS AND THE LAW

"Good faith," as that term is used in 11 U.S.C. § 1325(a)(3), is not susceptible of a universally-applicable definition. Rather, its presence must be determined on a case-by-case basis. In the instant case, the appellant has argued the existence of two intertwining indicia of a lack of good faith on the part of the Slades. First, the three-year payout to unsecured creditors under the debtors' plan of arrangement represents only a nominal percentage of the total amount owed such creditors. Second, by utilizing the Chapter 13 device, Mr. Slade will be able to obtain the discharge of a

debt which would otherwise be nondischargeable under Chapter 7 of the Bankruptcy Code.

Taken individually, neither of these factors would necessarily be a sufficient ground for finding bad faith on the part of a debtor. The only absolute minimum payout required under Chapter 13 is "the amount that would be paid . . . if the estate of the debtor were liquidated under chapter 7 of [the Bankruptcy Code]." 11 U.S.C. § 1325(a)(4) (West's Supp.1980). Similarly, the fact that the Code specifically allows the discharge of debts under Chapter 13 which are not dischargeable under Chapter 7 would preclude a finding of bad faith based merely upon the existence of such debts among the liabilities of an erstwhile Chapter 13 debtor. *See In re Graff,* 7 B.R. 426 (D.Kan.Bkrtcy.1980); *In re Seely,* 6 B.R. 309 (E.D.Va.Bkrtcy.1980); *In re McBride,* 4 B.R. 389 (M.D.Ala.Bkrtcy.1980).

Nevertheless, the Panel recognizes that Congress intended that Chapter 13 fulfill a distinct role from that of a Chapter 7 liquidation. The House Report accompanying H.R. 8200, for example, notes that

"[t]he purpose of chapter 13 is to enable an individual, under court supervision and protection, to develop and perform under a plan for the *repayment* of his debts over an extended period. In some cases, the plan will call for full repayment. In others, it may offer creditors a percentage of their claims in full settlement. . . .

"The benefit to the debtor of developing a plan of *repayment* under chapter 13, rather than opting for liquidation under chapter 7, is that it permits the debtor to protect his assets. In a liquidation case, the debtor must surrender his nonexempt assets for liquidation and sale by the trustee. Under chapter 13, the debtor may retain his property *by agreeing to repay* his creditors. Chapter 13 also protects a debtor's credit standing far better than a straight bankruptcy, because he is viewed by the credit industry as a better risk. In addition, it satisfies many debtors' desire to avoid the stigma attached to straight bankruptcy and to retain the

pride attendant on being able to meet one's obligations. The benefit to creditors is self-evident: *their losses will be significantly less* than if their debtors opt for straight bankruptcy."

H.R.Rep.No.95–595, 95th Cong., 1st Sess. 118 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6079 (emphasis supplied), *reprinted in* 2 App.Collier on Bankruptcy, pt. 11 (1980). The tenor of the above explanatory language makes it clear that the special benefits bestowed upon a Chapter 13 debtor are premised upon his willingness to repay at least some portion of his debts—secured, priority, or unsecured. It is, of course, recognized that a full repayment will not always be possible. In some cases, a plan may only deal with secured or secured and priority claims. Nevertheless, the panel believes that the above history implies that a debtor's repayment program should be related to his ability to make payments out of future income.

■ Having acknowledged this requirement, however, the panel must also recognize the vast differences of opinion which have been expressed in recent cases over the concept of "good faith" and the possible need for minimum repayment prerequisites under Chapter 13. The panel will not attempt, at this time, to propose a means for resolving this dispute. At the very least, however, the panel believes that the fact that a debtor's plan represents his best effort is a significant indication of good faith on his part. Absent any showing of a willful attempt to misuse Chapter 13 in defraud of creditors, best effort plans should normally satisfy the good faith requirements of 11 U.S.C. § 1325(a)(3). *But see In re Heard,* 6 B.R. 876 (W.D.Ky.Bkrtcy.1980); *In re Murallo,* 4 B.R. 666 (D.Conn.Bkrtcy.1980) ("best effort" may not be enough if payments under Chapter 13 plan are not "substantial" or "meaningful").

■ In the present case, the appellant does not question that the $135.00 proposed to be paid through the plan each month is as much as the debtors can reasonably afford to pay. It just complains that the total sum thus made available to unsecured

creditors is too small to qualify the Slades to utilize Chapter 13 and its superior discharge provisions. The panel cannot accept this proposition. Under such reasoning, the former embezzler with a relatively higher income would be permitted to obtain a discharge of all his debts through a Chapter 13 composition plan, while the more impecunious ex-embezzler would be forced to repay the debts arising from his fraudulent conduct. "Good faith" cannot simply be a matter of relative affluence. Chapter 13 has no minimal "entrance fees" beyond those set forth in 11 U.S.C. § 1325(a)(4).

The panel finds that the trial judge did not err in finding that the amended plan of arrangement which was presented in this case was proposed in good faith. Therefore, he did not abuse his discretion in confirming that plan.

Affirmed.