**In re Albert H. CALDWELL, Debtor.**

**Bankruptcy No. 3–85–01637.**

United States Bankruptcy Court,
E.D. Tennessee.

Nov. 10, 1986.

Wade M. Boswell, Knoxville, Tenn., for debtor.

Herbert S. Moncier, Knoxville, Tenn., for James E. Hardin, James C. Hardin and Ralph Majors.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

Three creditors, James E. Hardin, James C. Hardin, and Ralph Majors ("creditors"), holding nondischargeable debts pursuant to an order of this court entered while the case was pending under chapter 7, object to confirmation of the debtor's modified chapter 13 plan ("plan"). As grounds therefore, creditors allege—

(1) the plan has not been proposed in good faith; proposed payments are not meaningful and are not the debtor's best efforts;

(2) the value of the property to be distributed under the plan to unsecured creditors is less than the amount that would be paid on such claims if the estate of the debtor were liquidated under chapter 7 of the Bankruptcy Code;

(3) the plan fails to provide that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due will be applied to make payments under the plan;

(4) the plan proposes payments to the trustee for only thirty-six (36) months; and

(5) the plan makes no proposal for the disposition or use of the debtor's one-fourth interest in a residence occupied by his mother.

An extensive evidentiary hearing was held to consider confirmation of the debtor's plan on September 11, 1986.

I

A somewhat detailed history of this case is necessary to fully understand the debtor's plan and the creditors' objection thereto.

In 1979 the creditors instituted a civil action in the Tennessee state court against the debtor and three other persons for false arrest, false imprisonment, and malicious prosecution. The creditors alleged they had been the victims of a criminal escapade participated in by the debtor's son during the Christmas holidays in 1978; that the debtor, an Assistant Chief of Police with the City of Knoxville, took charge of the investigation, caused criminal warrants to be issued against them, and personally supervised their arrest. The criminal charges were later dismissed.

The resulting civil litigation against the debtor resulted in a jury verdict against the debtor and a co-defendant. The jury awarded creditors both compensatory and punitive damages. The judgment was entered on February 29, 1984.

Subsequently, the debtor appealed the civil judgment to the Tennessee Court of Appeals. The appellate court reduced the amount of punitive damages. The damage award against the debtor, as modified by the appellate court, is in the total amount of $40,000.00, representing $15,000.00 in compensatory and punitive damages awarded to James E. Hardin, $15,000.00 in compensatory and punitive damages awarded to James C. Hardin, and $10,-000.00 compensatory and punitive damages awarded to Ralph Majors. In all other respects the jury verdict and judgment were affirmed in an opinion of the court of appeals entered on April 23, 1985. The debtor then applied for permission to appeal to the Tennessee Supreme Court; but on August 12, 1985, that court declined to grant permission.

On October 2, 1985, the debtor commenced a voluntary chapter 7 bankruptcy case. Only three unsecured creditors are listed in the debtor's schedules—the three judgment creditors who now object to confirmation of the debtor's plan. Two se-

cured creditors are listed: the KPD Employees Federal Credit Union, $11,877.00; and Home Federal Savings and Loan, $1,578.00.

Thereafter, the creditors instituted an adversary proceeding (Adv.Proc. No. 3–85–1290) to determine the dischargeability of their judgment debt. Following a pretrial conference in the adversary proceeding, the creditors filed a motion for summary judgment. On April 17, 1986, this court entered a Memorandum and Judgment granting the creditors' motion for summary judgment, after finding that the civil judgment was nondischargeable pursuant to 11 U.S.C. § 523(a)(6).[1] No appeal was taken from that judgment. Prior to the entry of the April 17, 1986 summary judgment this court, on February 5, 1986, granted the debtor a discharge pursuant to § 727. The discharge was, however, entered subject to the future outcome of the creditors' adversary proceeding.

On June 9, 1986, the attorney who represented the debtor in the filing of the chapter 7 case and in all matters arising thereunder, including the debtor's defense of the nondischargeability issues raised in the adversary proceeding, filed a motion to withdraw as attorney for the debtor. That motion was granted and notice of appearance was thereafter filed by Richard Stair, Jr., who represented the debtor subsequent to June 9, 1986, in those matters presently at issue in the debtor's converted case.[2]

On June 9, 1986, the debtor filed a "Motion of Debtor to Convert Case to a Case Under Chapter 13 and For Revocation of Chapter 7 Discharge." On June 13, 1986, an Order for Relief was entered under chapter 13.[3] No ruling was made on that portion of the debtor's motion seeking to revoke the February 5, 1986, discharge granted under the provisions of § 727.

On June 19, 1986, the creditors filed a response opposing the debtor's conversion to a case under chapter 13 and request for revocation of the chapter 7 discharge. The creditors also moved for reconversion of the chapter 13 case to a case under chapter 7.

On June 20, 1986, the debtor filed an updated schedule of current income and expenses together with a chapter 13 plan. That plan proposed payment of $400.00 a month from his wages for thirty-six (36) months. The plan also provided that the debtor would pay his secured creditors outside the plan. The debtor proposed to fund the plan from his future earnings and with an additional sum of $6,300.00, in the possession of the chapter 7 trustee, collected from the liquidation of his IRA account. In his proposed plan the debtor listed a priority claim against the estate of $2,889.68, allegedly arising from the premature distribution of his IRA account.[4]

Subsequent to the September 11, 1986 hearing, the debtor filed a modified plan pursuant to § 1323 of the Bankruptcy Code whereby he proposes to pay to the trustee from his future earnings the sum of $550.00 each month for a period of 36 months.[5] The debtor further proposes to turn over to the trustee all tax refunds attributable to the debtor's earnings after conversion of the case to chapter 13. In addition the debtor proposes to pay to the trustee the additional sum of $6,300.00

---

1. A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity....
11 U.S.C.A. § 523(a)(6) (West 1979).

2. Prior to his installation on October 1, 1986, Bankruptcy Judge Stair was authorized to withdraw and Wade Boswell was substituted as attorney for the debtor.

3. The debtor may convert a case under [chapter 7] to a case under chapter 11 or 13 of this title at any time.
11 U.S.C.A. § 706 (West 1979).

4. Pursuant to Bankruptcy Rule 3004, on June 24, 1986, the debtor filed a claim in the name of the Internal Revenue Service in the amount of $2,627.18.

5. The debtor may modify the plan at any time before confirmation....
11 U.S.C.A. § 1323(a) (West 1979).

turned over to the chapter 7 trustee from the IRA account. The debtor proposes to pay the $132.00 monthly mortgage payment due Home Federal Savings and Loan on his jointly-owned marital residence outside the plan. He also proposes to pay outside the plan the sum of $150.00 per month to the KPD Federal Credit Union on two loans to his wife; these loans are partially secured by a jointly-owned 1985 Chevrolet automobile.

In summary, the only claims to be paid through the plan are the judgment debts in favor of Hardin, Hardin, and Majors, in the combined amount of $40,000.00 together with accrued interest through October 2, 1985, the date the debtor filed his voluntary petition under chapter 7; the priority claim of $2,627.18 to the Internal Revenue Service representing either the debtor's or the estate's anticipated liability attributable to the withdrawal of the IRA account; and expense of administration (trustee's compensation and expenses; attorney compensation).

## II

As heretofore indicated, the debtor is an Assistant Chief of Police with the Knoxville Police Department having been employed by the City for more than twenty-six (26) years. His gross pay is $2,889.47 per month and his take-home pay is $2,177.92. He has no current source of income other than from his employment. The debtor is married and has no dependent children. He is 54 years old and testified that he has no intention to retire in the foreseeable future. His wife is not employed outside the home.

The assets the debtor owned or had an interest in at the time of the filing of his chapter 7 petition are itemized as follows:

*Real Property*

1. His survivorship interest in the marital residence at Route 2, Wooddale Road, Strawplains, Tennessee, owned as a tenant by the entirety with his wife. This property is encumbered by a mortgage in favor of Home Federal Savings & Loan with an unpaid balance of approximately $1,000.00.

Testimony from the chapter 7 trustee was to the effect that an offer to purchase the debtor's survivorship interest had been solicited from the creditors and from the debtor with the trustee having received a written offer on behalf of the creditors through their attorney to purchase this survivorship interest for the sum of $500.00. As this is the only evidence of the value of the debtor's survivorship interest in this real estate, the court finds that the survivorship interest in fact has a value of $500.00.

2. A one-fourth (1/4) interest in a residence at 913 Ponder Road, Knoxville, Tennessee, which was purchased by the debtor's mother on May 18, 1978. In an amendment filed on June 9, 1986, and through his testimony at the hearing, the debtor asserts that this real estate is the exclusive property of his mother, because he was included as a grantee in the deed without his knowledge and his mother made the downpayment and has paid all monthly payments on the mortgage encumbering the property. Nonetheless, the debtor is the record owner of a one-fourth (1/4) interest. The debtor testified that in his opinion this real estate has a value of approximately $55,000.00 and that it is encumbered with a mortgage which had a pay off as of October 2, 1985, in the amount of approximately $12,900.00. The debtor further testified that in his opinion the value of his one-fourth (1/4) interest approximated $10,500.00. The creditors introduced a certified copy of the tax appraisal from the office of the Knox County Trustee which reflects the value of the property at $62,700.00. If this appraisal is accurate the value of the debtor's one-fourth (1/4) interest is approximately $12,500.00.

*Personal Property*

1. The debtor and his wife jointly own a 1985 Chevrolet automobile. This vehicle is encumbered with a lien in favor of the KPD Employees Federal Credit Union on obligations of the debtor's wife. The vehicle was purchased by the debtor and his wife as a family vehicle and is driven pri-

marily by Mrs. Caldwell both locally and to visit her mother in South Carolina and her other immediate family members in Nashville. No proof was introduced by either the debtor or the creditors as to the value of this motor vehicle apart from the debtor's schedules which reflect no equity in this vehicle.

2. Clothing valued at $200.00 all of which has been claimed and allowed exempt.

3. A shot gun valued at $100.00 which has been claimed and allowed as exempt.

4. A 1979 Chevrolet truck which is jointly-owned by the debtor and his wife with the debtor's interest valued at $1,000.00 having been claimed and allowed as exempt.

5. A fishing boat valued at $500.00 which has been claimed and allowed as exempt.

6. Hand tools valued at $150.00 which have been claimed and allowed as exempt.

7. Unpaid salary of $925.00 which has been claimed and allowed as exempt.

8. The sum of $6,880.18 in an IRA account with the KPD Employees Federal Credit Union of which $625.00 was claimed and allowed as exempt with the balance of $6,255.18 having been turned over to the chapter 7 trustee for the benefit of creditors.

From the evidence introduced at the hearing on this matter, recognizing the disparity in the value of the debtor's one-fourth (1/4) interest in the Ponder Road property, the court concludes that the maximum liquidation value of the debtor's estate is between $17,300.00 and $19,300.00. This conclusion reflects a summation of the value of the debtor's survivorship interest in the marital residence ($500.00); the value of the IRA account ($6,255.18); and the value of the debtor's interest in the Ponder Road real estate ($10,500.00 to $12,500.00).

### III

### *Reconversion to Chapter 7; Revocation of Discharge*

Creditors insist this case should be reconverted to a case under chapter 7. The debtor responds that 11 U.S.C.A. § 706(a) (West 1979) gives a debtor in a chapter 7 case the absolute right to convert to a case under chapter 13. Further, the debtor asks the court to revoke the discharge granted to him while the case was pending under chapter 7. The debtor also challenges the creditors' right to resist revocation of the discharge since the discharge did not affect their rights, their debts having been held to be nondischargeable.

Section 706 of the Bankruptcy Code provides in pertinent part as follows:

*Conversion.*

(a) The debtor may convert a case under this chapter to a case under Chapter 11 or 13 of this title at any time, if the case has not been converted under § 1112 or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable....

11 U.S.C.A. § 706(a) (West 1979).

The language of § 706(a) is unequivocal. A debtor has an absolute right to convert a chapter 7 liquidation case to a chapter 11 reorganization case or a chapter 13 individual adjustment of debt case. (See House Rep. No. 95–595, 95th Cong., 1st Sess. 380, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6336; Senate Rep. No. 95–989, 95th Cong., 2d Sess. 94, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5880.) Congress, in its drafting of the Bankruptcy Code of 1978, did not in any way condition a debtor's right to convert under § 706(a) by limiting the exercise of that right to a time preceding the grant of a debtor's discharge.

In support of their position that the order converting this case to chapter 13 should be revoked, or that the chapter 13 case be reconverted to chapter 7, the creditors contend that conversion to chapter 13 was not proper in that the motion to convert was filed only after the judgment was entered in the adversary proceeding determining their claim to be nondischargeable.

In *Street v. Lawson,* 55 B.R. 763 (9th Cir.BAP 1985), the debtor originally com-

menced a case under chapter 7. After the bankruptcy judge entered judgment in favor of a creditor for $30,000.00 and determined the debt nondischargeable, the debtor converted the case to one under chapter 13. The creditor objected to the debtor's plan on the basis it had not been proposed in good faith. The bankruptcy court denied confirmation finding that proposing to discharge an otherwise nondischargeable debt through the use of chapter 13 was "manipulative of the Bankruptcy Code." The bankruptcy appellate panel, citing *In re Jennings*, 31 B.R. 378 (Bankr.S.D.Ohio, 1983), reversed.

*In re Jennings* addressed the right to convert to a chapter 13 proceeding where a debtor converted from chapter 7 to chapter 13 because of actions, including failure to schedule assets, that jeopardized his general discharge. The court stated:

> The question of whether this Court has any discretion to prevent the debtor from converting his Chapter 7 case to one under Chapter 13 gives us greater pause. The language of § 706 clearly forbids any waiver of debtor's right to convert, and no limitation on that right can be read into that provision. As was noted in the House Report No. 95–595, 95th Cong., 1st Sess. 380 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6336: 'The policy of the provision is that the debtor should always be given the opportunity to repay his debts.'
>
> As is evident from § 1328, which provides for the discharge even of certain [chapter 7] nondischargeable debts, Congress intended that no limitations be imposed on debtors who wish to repay their debts, regardless of the circumstances under which those debts were incurred.

*Jennings*, 31 B.R. at 380.

■ The creditors' motion to revoke the order converting this case to one under chapter 13, or to reconvert the case to one under chapter 7, will be denied.

As pointed out by the debtor, the discharge granted to him while the case was pending under chapter 7 is "meaningless," his only unsecured debts having been held to be nondischargeable. The debtor also testified that he had incurred no postpetition debts; thus no subsequent creditors can be affected.

This court can see no harm to any creditor by granting the debtor's motion to revoke the discharge. It would have been far better for the debtor to have requested the court to delay the granting of his discharge until after the dischargeability question was determined. He did not do so, however, and the discharge was granted. Since for all legal purposes the discharge is meaningless, the debtor's motion to revoke will be granted.

## IV

The court is required to confirm the debtor's plan if the plan complies with the six requirements enumerated in § 1325(a) of title 11 and if the debtor proposes payments over the life of the plan which meet the requirements of § 1325(b). Applicable provisions of § 1325(a) and (b) at issue in the matter are as follows:

*Confirmation of plan.*

> (a) Except as provided in subsection (b), the court shall confirm a plan if—
>
> (1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;
>
> .    .    .    .    .
>
> (3) the plan has been proposed in good faith and not by any means forbidden by law;
>
> (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
>
> . . . .
>
> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

(2) For purposes of this subsection, 'disposable income' means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor; ...

. . . .

11 U.S.C.A. § 1325(a) and (b) (West 1979 & Supp.1986).

Creditors insist that the debtor's plan cannot be confirmed because it does not meet the confirmation requirements set forth in § 1325(a)(1), (3) and (4) and, further, that the debtor's plan does not provide that all of his projected disposable income will be applied to make payments over the three-year life of the plan, as required by § 1325(b)(1)(B).

The creditors contend that the debtor's plan fails to comply with § 1325(a)(1) because the grant of the debtor's discharge, on February 5, 1986, under § 727 prohibits confirmation of a chapter 13 plan arising out of the same case. Since the court has heretofore granted the debtor's motion to revoke that discharge, the basis for this objection has been eliminated.

The creditors allege numerous matters in asserting that the debtor's plan is not filed in "good faith." Analyzing these matters, the debtor suggests that ten issues relate to the judgment of nondischargeability entered in favor of the creditors in Adv.Pro. No. 3–85–1290; two issues relate to valuation; one issue relates to the 1985 Chevrolet automobile owned by the debtor and his wife; one issue relates to a claimed exemption of $925.00 in unpaid salary; one issue relates to the debtor's proposal to make payments over a 36–month period rather than a five-year plan; one issue relates to the potential cash value of life insurance policies owned by the debtor; one issue relates to the debtor's proposal to pay secured creditors outside the plan; one issue relates to the claim filed on behalf of the Internal Revenue Service; and one issue relates to the creditors' assertion that the plan proposes to pay them an amount less than they would be paid if the debtor's estate were liquidated under chapter 7.

The court has carefully considered the creditors' objections and finds they do not support an objection to confirmation.

In *Street v. Lawson, supra,* the Bankruptcy Appellate Panel for the Ninth Circuit addressed the issue of good faith in a chapter 13 case converted from a chapter 7 after a sizeable debt had been determined to be nondischargeable under § 523. With respect to the good faith issue the appellate panel in *Street* observed:

*In re Slade,* 15 B.R. 910 (9th Cir.BAP 1981), specifically rejected the argument that proceeding with a Chapter 13 in order to discharge debts otherwise nondischargeable constitutes bad faith. *Slade,* [sic] affirmed the confirmation of a Chapter 13 plan which proposed payments of $135 per month for three years and resulted in less than five percent payout to unsecured creditors. A substantial portion of the debt owing in *Slade* was incurred from the embezzlement of funds by Slade while working as an employee of Bank of America.

[T]he fact that the code specifically allows the discharge of debts under Chapter 13 which are not dischargeable under Chapter 7 would preclude a finding of bad faith based merely upon the existence of such debt among the liabilities of an erstwhile Chapter 13 debtor.

. . . .

[T]he fact that a debtor's plan represents his best efforts is a significant indication of good faith on his part. Absent any showing of a willful attempt to misuse Chapter 13 in defraud

of creditors, best effort plans should normally satisfy the good faith requirements of 11 U.S.C. § 1325(a)(3).

....

In both *Slade* and this case, *debtors faced with otherwise nondischargeable debts are attempting to work out their debt by payments representing their reasonable best efforts over the statutory three year period.*

*Street* 55 B.R. at 764–65 (quoting in part *In re Slade*, 15 B.R. at 912) (emphasis added).

In a similar case where the debtors converted to chapter 13 after a determination of nondischargeability, Bankruptcy Judge Hess noted:

[T]he mere fact that one of the purposes of the debtor in seeking relief under Chapter 13 is to discharge a debt which would not be dischargeable in a Chapter 7 case under § 523, does not render a plan one not filed in good faith. Obviously the more liberal provisions of § 1328(a) over those of § 523 were enacted for the benefit of debtors. It would be incongruous to hold that bad faith is demonstrated by utilizing the provisions of a statute enacted for the benefit of the debtor.

*In re Whitehead*, 61 B.R. 397, 399 (Bankr. D.Ore.1986).

■ The debtor's plan was not proposed in bad faith simply because it proposes to deal with the unsecured debts nondischargeable in chapter 7. In making this determination, the court has considered the debtor's prepetition conduct as well as the initial filing under chapter 7. As will be seen hereafter, the debtor's plan represents a good-faith effort to satisfy the creditors' claims.

The two issues relating to valuation involve the debtor's interest in the jointly-owned marital residence and the value of his one-fourth interest in the residence occupied by his mother. As heretofore stated, the value of the debtor's survivorship in the marital residence is $500.00. Although the debtor disclaims any interest in the residence occupied by his mother, he has provided for the value of a one-fourth interest in his proposed payments. In arriving at the amount creditors would receive in a chapter 7 liquidation, he has valued his interest in this property at $12,500.00, a reasonable valuation.

The trade-in of a 14–year old vehicle by the debtor some five months prior to bankruptcy for a 1985 Chevrolet is not related to the filing of the debtor's bankruptcy petition and proposed plan. Nor does the debtor's claim to his statutory exemptions involve any element of bad faith.

Creditors' complaint that the debtor's plan provides for payments over 36 months rather than five years is without merit. Section 1322(c) states that the plan may not provide for payments over a period longer than three years, unless the court, *for cause*, approves a longer period. Section 1325(b) states that, upon objections of the trustee or an unsecured creditor, the court may not approve the plan unless the plan provides that all of the debtor's projected disposable income for a *three-year period* will be applied to make payments under the plan.

The objections relating to the debtor's life insurance are totally insufficient to justify a finding of bad faith. No cash surrender value was established. Monthly payments for *all* insurance carried by the debtor and his wife total $92.26 per month, or less than five percent of his gross pay.

■ The "totality of the circumstances" surrounding this case has been exhaustively reviewed in determining whether the debtor's plan meets the general good faith standard of § 1325(a)(3). The factors that have been considered include, but are not limited to, the percentage of proposed repayment, the debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the circumstances under which the claims arose, the debtor's prepetition culpability, and the debtor's initial filing of a chapter 7 case instead of a chapter 13. After this review, and considering all militating factors, the court is satisfied that

there has not been an abuse of the provisions, purpose, or spirit of chapter 13. See 9 *Collier On Bankruptcy*, ¶ 9.20 at 318 (14th ed. 1978); *Neufeld v. Freeman*, 794 F.2d 149 (4th Cir.1986) (both prepetition conduct and prior bankruptcy filings by the debtor may be relevant to the good faith inquiry); *Deans v. O'Donnell*, 692 F.2d 968 (4th Cir.1982) (good faith does not per se require substantial payment; totality of circumstances must be considered). The good faith standard of § 1325(a)(3) has been met.

Creditors contend that the debtor proposes to pay them an amount less than they would receive if the debtor's estate were liquidated under chapter 7. Section 1325(a)(4). This is incorrect. In this case the debtor proposes to pay $19,800.00 from his salary over a three-year period. He also proposes that nearly $6,300.00 which the chapter 7 trustee received from liquidating the IRA account be used as additional funding for the plan. Thus at least $26,100.00 will be available. After payment of expense of administration and the $2,628.00 priority claim, approximately $20,000.00 will be available for distribution to creditors.[6] The court has previously determined that the liquidation value of the debtor's estate under chapter 7 is between $17,300.00 and $19,300.00. Thus, assuming the same payments for expense of administration and the priority tax claim in a chapter 7 case, creditors will receive under the plan not less than they would be paid if the debtor's estate were liquidated under chapter 7.

Creditors further contend that the debtor's plan does not provide that all of the debtor's projected disposable income to be received in the three-year period will be applied to make payments under the plan. The proof is to the contrary. "Disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended for the maintenance and support of the debtor and his dependents. Section 1325(b)(2)(A). The court has carefully reviewed the debtor's proposed expenditures for the three-year

period and finds them reasonable and necessary. See Second Amended Schedule of Current Income and Current Expenditures, filed August 29, 1986.

Other allegations by creditors that the plan does not meet the requirements of Sections 1325(a)(1), (3), and (4) also have been considered and rejected. The debtor's modified plan represents a good-faith effort by the debtor to satisfy the creditors' claims. The modified plan will be confirmed.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.

---

**6.** An application for attorney fees in the amount of $1,000.00 is presently pending.