**In re David PORRAS, a/k/a I. Davis Porras, Debtor.**

**Bankruptcy No. 95–30583–C.**

United States Bankruptcy Court, W.D. Texas, El Paso Division.

Sept. 29, 1995.

Bernard R. Given, II, El Paso, TX, for debtor.

Andrew B. Krafsur, Trustee, Krafsur, Mott & Miranda, El Paso, TX.

## MEMORANDUM DECISION OVERRULING OPPOSITION OF THE UNITED STATES TO DEBTOR'S MOTION TO CONVERT CASE FROM CHAPTER 7 TO CHAPTER 11

LEIF M. CLARK, Bankruptcy Judge.

■ CAME ON for consideration the foregoing matter. Shortly after the Chapter 7 Trustee sought to examine the debtor pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, the debtor filed a motion to convert his case to chapter 11. At a hearing to quash the notice of 2004 examination, the debtor urged that, as a result of his having filed a motion to convert, the 2004 examination should be quashed. The United States opposed quashing the 2004 examination (as did the trustee), on grounds that, *inter alia,* the motion to convert had not yet been granted and there was opposition to the conversion on file. The court overruled the objections and quashed the 2004 examination, ruling in part that the entry of the order granting the motion to convert was a mere ministerial act, depriving the chapter 7 trustee of the requisite standing to pursue the examination.[1]

The court addressed in its ruling at the hearing on the motion to quash the very concerns stated here in the United States' opposition to the debtor's motion to convert. This decision reiterates that ruling on its merits, in order to affirm that section 706(a) is to be enforced as written.

---

1. The court noted that the chapter 7 trustee would, in all likelihood, still have standing to participate in the converted case due to the likely presence of administrative expenses incurred while acting as trustee, giving the trustee an administrative claim in the bankruptcy case. However, the *status* of the trustee would be converted from that of trustee for the estate to that of creditor of the estate, fundamentally altering the premise upon which the 2004 examination was originally proposed. The quashing of the examination thus did not (and does not) bar the chapter 7 trustee from reinitiating such an examination in his capacity as creditor of this estate, should he so choose. And, of course, there is no bar to the United States' pursuing such an examination, in view of its substantial asserted claims in this case.

## BACKGROUND FACTS

In its opposition to the motion to convert, the United States complains that this bankruptcy case was filed on the eve of trial of a wrongful levy suit then pending in the U.S. District Court, Midland Division, styled *The Lucille Christie Blakley Trust and Lucille Christie Blakley v. United States*, which involves the ownership of some 4,000 different items which were in the debtor's actual dominion, custody and control when the levy was brought, but which the debtor's mother claims belong to her or her trust. The lawsuit challenges the IRS' right to levy on these assets and awaits a ruling by the district judge. The United States alleges that the debtor "is attempting to commit bankruptcy fraud by failing to disclose significant assets on his bankruptcy schedules." For example, during the course of discovery in the wrongful levy litigation, the United States says that it discovered a "Support Trust" which became revocable 10 years after its creation in 1983. The chapter 7 trustee has exercised the debtor's revocation rights under that trust, ostensibly bringing the assets in that trust into the bankruptcy estate. This Support Trust was not disclosed in the bankruptcy schedules, says the United States.

The debtor similarly failed, says the United States, to disclose an interest in a Property Trust, 75% of which is owned by the Lucille Christie Blakley Trust—which the United States contends is the debtor's alter ego.

■ The United States also offered a copy of the debtor's deposition as an exhibit to its opposition, inviting the court to examine the evasiveness and nonresponsiveness of the debtor's answers to even the simplest of questions.[2] Examples of untruthfulness were also offered by the United States, as supported by other deposition testimony (also attached to the opposition). The United States then proceeds to add to its pleading copies of income tax returns, invoices for paintings (which the United States points out were left off the debtor's schedules), and various other factual allegations regarding the debtor's income and personal life style.

The United States then concludes that "Porras's Motion to Convert was filed the day after counsel for the United States informed Porras's attorney that the United States and the Chapter 7 Trustee had reached an agreement regarding the United States' Motion for Relief from the Automatic Stay. The Motion to Convert is a blatant attempt to gain standing to object to the United States' Motion for Relief From Stay...."

The court has taken no evidence with regard to this opposition, and has no plans to. For the reasons set out in this decision, the court instead elects to permit the conversion to go forward and to leave the United States to its other, rather substantial remaining remedies.

## DISCUSSION

■ Section 706(a) states that a debtor may convert its chapter 7 case to a case under chapter 11 at any time, and adds that, upon the presentation of such a request, the court *shall* convert the case. 11 U.S.C. § 706(a). The bankruptcy rule that implements this statutory provision adverts that the procedure for conversion requires the presentation of a motion, but adds that such a motion is *not* a contested matter under Rule 9014. FED.R.BANKR.P. 1017(d). Taken together, the statute and rule confer on the debtor the "absolute right" to convert his or her case to chapter 11 or chapter 13. *In re Martin*, 880 F.2d 857, 858 (5th Cir.1989) (legislative history makes clear Congress' intent to give the debtor an absolute one-time right to convert).

---

2. The court has not examined the deposition. In a contested hearing, the debtor might well raise evidentiary objections to one or more portions of that deposition. As the finder of fact, this court must remain impartial. Reading the deposition now would, in effect, permit the court to review evidence prior to trial, without the other party's being able to raise evidentiary objections. The resulting prejudice to the debtor, coupled with the impairment to this court's neutrality, require that the court resist the temptation to pore through what would no doubt promise to be an intriguing bit of testimony.

## A. *In re Martin*

The Fifth Circuit, Judge Carolyn King writing for the panel, noted in *Martin* that

The courts have ... broadly construed the right of a debtor to convert and have held that the court does not have the discretion to block the conversion. *See In re Kleber*, 81 B.R. 726, 727 (Bankr.N.D.Ga.1987) (court has no discretion to determine whether debtor should be allowed to convert from Chapter 7 to Chapter 11 for the first time even if the conversion is sought to block efforts of the Chapter 7 trustee to bring adversary proceedings against the debtor); *In re Easley*, 72 B.R. 948, 951 (Bankr.M.D.Tenn.1987) (Chapter 7 debtor must be allowed to convert if she has not previously converted from another Chapter even after judgment of nondischargeability in a Chapter 7 case); *In re Caldwell*, 67 B.R. 296, 300–01 (Bankr.E.D.Tenn. 1986) (same); *In re Street*, 55 B.R. 763, 765 (Bankr.9th Cir.1985) (same); *In re Jennings*, 31 B.R. 378, 380 (Bankr.S.D.Ohio 1983) (same).

*Id.* Indeed, added the court, the express language of the statute and the legislative history are in complete harmony that the right of conversion is absolute, such that the role of the court is essentially ministerial. Congress actually intended to *encourage* such conversions, because "the debtor should always be given the opportunity to repay his debts." S.REP. NO. 989, 95th Cong, 2d Sess 380, *reprinted in* U.S.CODE CONG. & AD-MIN.NEWS 5787, 5880. The Fifth Circuit went on to reverse the bankruptcy court's refusal to grant the debtor's attempted conversion from chapter 7 to chapter 13. *Martin*, 880 F.2d, at 860.

The United States cites *Martin* for the proposition that it is permissible for a court to deny a debtor's attempted exercise of his or her one-time conversion right, relying on the *dicta* which adverts to a line of case law creating such an exercise of discretion upon a showing of "extreme circumstances." *See Martin*, 880 F.2d, at 859 n. 2, *citing In re Calder*, 93 B.R. 739, 740 (Bankr.D.Utah

1988); *In re Straugh*, 41 B.R. 757, 759 (Bankr.W.D.Penn.1984). The support upon which the United States relies is weak at best, however. The Fifth Circuit in *Martin* gives but a nod to the existence of case law support for an exception on the way to noting that no evidence was presented by the trustee of any such "extreme circumstances" in the case *sub judice*. That is hardly the stuff of which a recognized exception is made, especially in view of the strongly stated proposition just a few sentences later in the decision that "[t]he statute itself ... speaks in absolute terms." *Id.*, at 859.

## B. *In re Calder*

■ *Calder* is also slim authority for ignoring the plain language of the statute and its implementing rule. The court there relied on its "inherent and statutory authority to protect the integrity of this Court," then promptly reached for section 105(a). No doubt the court was offended by what it perceived as an abuse of the system, stating that "[t]o prevent such an abuse the Court shall assume a strict and critical stance towards any maneuvers or schemes which would have the effect of undermining the integrity of the system." *Calder*, 93 B.R., at 740. But a court's sense of rectitude cannot be substituted for ignoring the plain meaning of a statute, especially when readily available alternatives are easily at hand to redress any wrongdoing.

■ Any judge-made exception that operates to place a gloss on statutory language as implacable as that found in section 706(a) poses a significant danger of judicial legislation. The Code (like many other federal enactments) is full of examples of statutes which work less well in practice than Congress anticipated they would when the language was being developed by staffers and debated in committees. No doubt, the "one time right to convert" found in section 706(a) is one such statute, inviting as it does strategic maneuvering to avoid unpleasantness (or worse).[3] It devolves to a court to make

---

**3.** Indeed, many cases which have upheld the plain language of section 706(a) have done so in the face of just such maneuverings. *See, e.g., In*

*re Kleber*, 81 B.R. 726, 727 (Bankr.N.D.Ga.1987) (conversion sought to block efforts of trustee to bring adversary proceeding against the debtor);

statutes fit in practice, which is why published judicial decisions are so important even in areas heavily fleshed out by statute or code. But courts exercising that authority must always be mindful of their limits. Under our system of government, the coordinate branches of government are expected to exercise a certain restraint, lest they stray into another branch's bailiwick. For the courts, the greatest temptation is to "fix" statutes with judicial decisions having the force of law. It is a temptation which must be assiduously avoided, in deference to our structure of government. THE FEDERALIST, No. 51, (Wesleyan University Press, Jacob E. Cooke, editor, 1961), at p. 349.[4]

### C. Adhering to the plain meaning of the statute and rule

■■■ The circumstances and timing of the motion to convert in this case strongly suggest that the debtor has, in all likelihood, timed his decision to convert to chapter 11 to prevent his having to appear at a Rule 2004 examination, frustrating the trustee's efforts to delve into the debtor's affairs, perhaps to uncover undisclosed assets or improper conduct on the part of the debtor. As unsavory as such a tactic might appear to be at first blush, however, a court ought not intervene as though it were a party, especially in the face of a statute and rule so facially clear. Of course the plain meaning rule demands that the statute's words be given their proper effect, as the Fifth Circuit in *Martin* has already explained. But there are two additional reasons why it is neither necessary nor appropriate for a court to refuse to convert when requested under section 706(a).

#### 1. Ample remedies already available.

First of all, all parties have ample remedies to meet any abuse inflicted by a conversion such as this. The United States, for example, may move immediately for the reconversion of this case to chapter 7, as authorized by section 1112(b). 11 U.S.C. § 1112(b). The courts have made it amply clear that a debtor's bad faith may be grounds for conversion of a chapter 11 case to chapter 7 under this statute. *In re Stolrow's Inc.*, 84 B.R. 167 (9th Cir. BAP 1988) (dismissal of Chapter 11 case for lack of a good faith filing is matter for bankruptcy court's discretion); *see also, Colonial Daytona Ltd. Ptnshp. v. American Savings of Fla.*, 152 B.R. 996 (M.D.Fla.1993); *Matter of Mitan*, 168 B.R. 326 (Bankr.E.D.Mich.1994). The very bad faith alleged by the United States in its opposition to the motion to convert might well, if proven, support a motion to reconvert. Thus, the very relief the United States seeks can be obtained *without* the court's having to violate the express language of section 706(a).[5]

In addition, the United States or the chapter 7 trustee might also seek sanctions against the debtor for filing the motion to convert as and when he did, on grounds that the pleading was interposed for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case. FED.R.BANKR.P. 9011(a). Such a motion, if successful, would permit the moving parties to recover all costs and other damages that they might have suffered as a result of the

---

*In re Easley*, 72 B.R. 948, 951 (Bankr.M.D.Tenn. 1987) (conversion prompted by finding of nondischargeability).

**4.** Legislation may be good or bad, far-sighted or improvident, useful or misguided. We are, like all citizens, entitled to our opinions. In our unique and special positions, we may even be especially qualified to voice those opinions, given that we see in practice whether or not a given statute actually works. We may even hope that the legislature will respond positively to our expressed opinions with modifications to statutes that do not work as well as intended.

But we may not arrogate to ourselves the legislative role. For when we do, we cross that line that assures appropriate separation of powers, and presume to ourselves a role that the Founding Fathers thought ought to be entrusted to men and women who would be answerable to the people for their actions. Judicial officers, by virtue of their appointments, are not answerable to the people—at least not in the sense that they can easily be removed should their decisions fail to meet with the approval of the people. They ought not legislate unless they are also prepared to stand for election. And that they cannot do unless they step down as judicial officers.

**5.** In fact, the United States in its opposition moves in the alternative for yet another form of alternative relief—the appointment of a chapter 11 trustee. 11 U.S.C. § 1104.

Rule 9011 violation. Again, the aggrieved parties have a remedy, thus obviating the need for the court to exercise extraordinary intervention by refusing to give effect to the plain language of section 706(a).

2. *This is not a contested matter.*

█ Secondly, were the court to simply refuse to convert the case as requested, it would in effect be presuming the correctness of the assertions made by the United States, without the United States' having to sustain the burden of proof imposed on it by other remedial statutes and rules, such as section 1112(b) and Rule 9011. Of course the United States stood ready to offer proof in support of its opposition, and that proof might well have supported its assertions, but that really misses the point. The bankruptcy rule is quite express in *excluding* motions made under section 706(a) from the category of "contested matters." FED.R.BANKR.P. 1017(d). Were the court to entertain an evidentiary hearing on the United States' opposition, it would violate the precise terms of Rule 1017(d) and turn the motion to convert into a contested matter.

Perhaps appreciating this roadblock, the United States simply attached its "proof" to its opposition, in the hopes that the court would read it.[6] But that tactic only emphasizes how important it is that section 706(a) be honored according to its terms. For the exception carved out by *Calder* only invites creditors or a trustee to present evidence on an *ex parte* basis in the hopes of "poisoning the well," albeit for what no doubt appear to the objecting parties to be thoroughly justifiable reasons. No doubt the United States in this case is as concerned about preserving the integrity of the bankruptcy process and preventing egregious abuse as was Judge Allen in *Calder*. That is laudable. But begging a judicial officer sworn to impartiality to intervene without the appropriate protections that notice, an opportunity for hearing, due process, burdens of proof, and the rules of evidence normally provide also demeans the integrity of the judicial process. There are ways to get the sort of evidence the United States wants to present before the court. This is not it.

CONCLUSION

For the foregoing reasons, the court overrules the opposition of the United States to the debtor's motion to convert, albeit without prejudice to the United States' urging the alternative forms of relief available to it under the Bankruptcy Code and Rules (and whatever other laws the United States might find applicable to this situation). The court has already entered an order converting this case, and no further order is required.

---

6. And, perhaps, be sufficiently inflamed to take the steps Judge Allen took in *Calder* when he

discovered what he found to be abusive conduct.