In re Jerald W. THORNTON, Debra S. Thornton, Debtors.

Bankruptcy No. 96–31032.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Dec. 6, 1996.

Christopher M. Hawk, Dayton, OH, for Debtors.

Ruth A. Slone–Stiver, Chapter 7 Trustee, Dayton, OH.

George W. Ledford, Chapter 13 Trustee, Englewood, OH.

Andrew M. Engel, Centerville, OH, Trial Attorney for National City Bank, Dayton.

## DECISION AND ORDER DENYING DEBTORS' MOTION TO CONVERT

WILLIAM A. CLARK, Chief Judge.

The court has jurisdiction in this matter pursuant to 28 U.S.C. § 1334 and the standing order of reference entered in this district. Motions to convert are matters concerning the administration of the estate, and thus are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A).

## PROCEDURAL HISTORY

This proceeding came on for consideration upon the Debtors' Motion to Convert [Doc. # 40–1] and Memorandum in Support [Doc. # 51–1]; the Chapter 7 Trustee's Objection [Doc. # 44–1] and Memorandum in Support [Doc. # 69–1]; the Chapter 13 Trustee's Motion Opposing Conversion [Doc. # 64–1]; and creditor National City Bank's Objection to Conversion [Doc. # 71–1].

After proper notice to the parties in interest, a hearing was conducted November 8, 1996. At that hearing, each of the parties in question presented arguments and evidence in support of their respective positions, and the court took the matter under advisement. After careful consideration of the parties' pleadings as well as the arguments and evidence presented at the November 8, 1996 hearing, the court is now prepared to issue its decision in this matter.

## FACTUAL HISTORY

On March 11, 1996, Jerald W. Thornton and Debra S. Thornton ("Debtors") filed a joint voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (1994). The petition in question, including its Schedule A list of real property and Schedule B list of personal property, was signed by the Debtors. Its completeness and accuracy were attested to by the Debtors at the Section 341 meeting on July 18, 1996. Legal counsel assisted the debtors in preparing the petition. The debtors each have operated businesses in the past. They are sophisticated business persons. Their attorney remained as counsel for the Debtors until September 26, 1996, when he was replaced by the Debtors' present counsel.

As a result of investigation by the Chapter 7 Trustee, it became apparent that the Debtors' original petition was inaccurate in many ways. On the petition's Schedule A list of real property, the Debtors listed a single item, their residence, and placed its value at $130,000, the amount of the secured claim on the property. Subsequent investigation has revealed that the Debtors just one year prior to the petition represented in loan applications the residence's value at $175,000 to $180,000, and possessed an appraisal from March of 1995 that valued the property at $180,000. By the hearing date the residence was subject to foreclosure by the mortgagee.

There were several inaccuracies in the petition's Schedule B list of personal property. In that schedule, the Debtors represented the total value of their household goods and furnishings, including audio, video, and computer equipment as being $1,000. Subsequent events have shown that representation to be grossly inaccurate. In the loan applications discussed above, the Debtors listed the value of their household goods at $50,000. Mrs. Thornton admitted at the Section 341 meeting that the value of these goods is somewhere between $35,000 and $40,000. At the first meeting of creditors pursuant to 11 U.S.C. § 341 the trustee questioned each debtor about inaccuracies or deficiencies in the schedules filed with the petition. When asked about jewelry Jerald Thornton untruthfully said he had sold the jewelry before filing bankruptcy. Under questioning the debtors revealed that they had Disney collectibles and that they owned a 1986 Mazda RX7 automobile which were not listed in their schedules. The debtors admitted that they had lied about the sale of jewelry. They had not sold jewelry. The jewelry was worth $2500 to $2800 by Debra Thornton's estimate. The debtors have an insurance rider covering the jewelry for $20,000 and on the collectibles for $20,000.

Several issues have also arisen regarding the Debtors' listing of vehicles owned on Schedule B of the petition. Debtors listed only a single vehicle, a 1986 Mercedes 300E, on this schedule, and placed the value of the

automobile at $2,000. In the National City Bank loan applications, the Debtors listed the value of the Mercedes at $18,000, and the NADA average book value for this model automobile is $13,850. In the amended Schedule B debtors indicate a value of $9,500 for this automobile. The Debtors failed to list in Schedule B a 1986 Mazda owned by the Debtors and driven by the Debtors' daughter, but had listed the Mazda's value as $5,000 in the National City Bank loan application. In the amended Schedule B debtors indicate a value of $2,475 for this automobile.

The Chapter 7 Trustee and counsel for National City Bank, Dayton have offered these and numerous additional examples where the Debtors' assets in the original bankruptcy petition were given a lower value than that given in the National City Bank application only thirteen months prior to commencing this Chapter 7 case.

Likewise, there were several instances where the liabilities listed on the bankruptcy petition were not listed on the National City Bank loan application. For example, the Debtors failed to list more than $6,000 in preexisting credit card debt on the National City Bank application, yet properly listed these liabilities in Schedule F of the original petition. Several other significant liabilities which existed at the time of the loan application were also not mentioned on the application but were listed on the petition. Altogether, Debtors neglected to list more than $75,000 in liabilities on the National City Bank application.

The second and present attorney, a well respected and experienced bankruptcy attorney, took very commendable action to rehabilitate the debtors, by having extensive appraisals done to reflect reasonably correct valuations. He also promptly amended Schedule B to make full disclosure of all assets of the debtors.

Debtors' amended Schedule B, filed November 7, 1996, itemized household goods and furnishings, including audio, video, and computer equipment for a total value of $8,340. The debtors were unpersuasive in trying to explain the irregularities by their failure to read the petition and schedules and to intimate that the values and details were left to their attorney. At the trial Debra acknowledged their partial responsibility for the low asset values.

On September 26, 1996, Debtors filed a motion to convert this case from a Chapter 7 filing to a Chapter 13 filing. It is that motion that was the subject of the November 8, 1996 hearing, and it is that motion that the court addresses today.

## CONCLUSIONS OF LAW

Motions to convert from Chapter 7 of the United States Bankruptcy Code to another Chapter under the Code are governed by § 706, which states, in pertinent part:

> The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

11 U.S.C. § 706(a) (1994).

Debtors interpret this section to mean that a debtor has an "absolute right" to convert from a Chapter 7 to a Chapter 13 at any time. Debtors cite to several cases which have held in favor of this assertion. *See, e.g., Street v. Lawson (In re Street)*, 55 B.R. 763, 766 (Bankr. 9th Cir.1985); *In re Caldwell*, 67 B.R. 296, 300 (Bankr.E.D.Tenn.1986), *rev'd*, 895 F.2d 1123 (6th Cir.1990); *In re Jennings*, 31 B.R. 378 (Bankr.S.D.Ohio 1983) (Newsome, J.). An examination of the facts of these cases shows that they do not stand for such an unequivocal right, but rather the limited right to convert in the absence of bad faith.

In *Street*, the appellate panel dealt with an motion to convert to Chapter 13 after the bankruptcy court had entered a judgment of nondischargeability in Chapter 7. *In re Street*, 55 B.R. at 763–64. Contrary to Debtors' assertion, the panel did not establish a rule whereby conversion to Chapter 13 is absolute. Instead, the appellate panel examined the good faith requirement of § 1325(a)(3), and concluded that where a debtor puts forth a plan that represents his best efforts, even where that plan might seek to discharge an otherwise nondischargeable

debt, the requirement may be satisfied. *Id.* at 765.

In *Caldwell,* the debtor filed a voluntary Chapter 7 petition, listing only three unsecured judgment creditors in the schedules. *In re Caldwell,* 67 B.R. at 297. The three judgment creditors instituted an adversary proceeding to determine the dischargeability of their debt, and the bankruptcy court granted summary judgment in their favor. *Id.* at 298. Prior to the entry that judgment, however, the court granted the debtor his discharge, subject to the outcome of the adversary proceeding. *Id.* At this point, the debtor's original counsel withdrew from the case. *Id.* As in the instant case, the debtor's new counsel filed a motion to convert the case to Chapter 13. *Id.*

The bankruptcy court was then faced with the limited question of whether a debtor, who had done nothing wrong other than originally choosing Chapter 7 instead of Chapter 13, could be prohibited from converting to Chapter 13 after a judgment of nondischargeability and the entry of discharge. In addressing this limited issue, Judge Bare concluded that "[t]he language of § 706(a) is unequivocal. A debtor has an absolute right to convert a chapter 7 liquidation case to a chapter 11 reorganization case or a chapter 13 individual adjustment of debt case." *Id.* at 300. Judge Bare went on to analyze the dischargeability of the judgment debt under Chapter 13's good faith requirements, and concluded that " 'the fact that the Code specifically allows the discharge of debts under Chapter 13 which are not dischargeable under Chapter 7 would preclude a finding of bad faith based merely upon the existence of such debt among the liabilities of an erstwhile Chapter 13 debtor.' " *Id.* at 302 (quoting *Bank of Am. Nat'l Trust & Savs. Assoc. v. Slade (In re Slade* ), 15 B.R. 910, 912 (9th Cir.BAP 1981)).

On appeal, the Sixth Circuit did not address the issue of right to convert, but reversed the bankruptcy court's finding of good faith. *In re Caldwell,* 895 F.2d at 1128. In so doing, the Circuit stated that "[t]he debtor may proceed under Chapter 13, with the court's permission, if his plan meets the six criteria of 11 U.S.C. § 1325(a), and if he proposes payments which meet the requirements of 11 U.S.C. § 1325(b)." *Id.* at 1126. Noting what the opinion characterized as "an unbroken pattern of deceit and delay," *Id.* at 1127, the Sixth Circuit panel stated that "courts should not approve Chapter 13 plans which are nothing more than 'veiled' Chapter 7 plans." *Id.* at 1126. The Circuit concluded that the debtor in question had attempted to reduce the assets available to creditors and avoid paying judgment creditors, and thus was "not the type of debtor whom the bankruptcy laws were meant to protect." *Id.* at 1128.

Finally, in *Jennings,* Judge Newsome of this district considered the issue of whether a debtor who had engaged in questionable and fraudulent conduct should be prevented from converting from Chapter 7 to Chapter 13. *In re Jennings,* 31 B.R. at 379. In considering this issue, the court stated that:

> [t]he question of whether this Court has any discretion to prevent the debtor from converting his Chapter 7 case to one under Chapter 13 gives us greater pause. The language of § 706 clearly forbids any waiver of debtor's right to convert, and no limitation on that right can be read into that provision. As was noted in House Report No. 95–595, 95th Cong., 1st Sess. 380 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6336: 'The policy of the provision is that the debtor should always be given the opportunity to repay his debts.'

*Id.* at 380. The debtor was therefore permitted to convert. *Id.*

Judge Newsome went on to state, however, that "the debtor will be required to meet all of the requirements of 11 U.S.C. § 109 and Chapter 13 as a prerequisite to the confirmation of his plan" and that "[i]f debtor's plan fails to meet the requirements of Chapter 13, or if debtor fails to comply with the terms of his plan or the orders of this Court, this case will be reconverted to a case under Chapter 7." *Id.*

Thus of the Debtors' three major cases in support of an "absolute right" to convert from a Chapter 7 to a Chapter 13, only *In re Jennings* comes close to making such an

assertion. Even so, the court in *Jennings* made it clear that the debtor was still subject to the good faith requirements of § 1325(a)(3).

■ This court agrees with the court in *Jennings* that there is no limitation on the right to convert expressly stated in § 706. The court does not agree, however, that a debtor must be permitted to convert to Chapter 13 when debtors' conduct is sufficient to warrant a finding of lack of good faith. Instead, this court agrees with the courts which have held that a debtor may be prevented from converting when ·sufficient evidence exists of the debtor's lack of good faith. *See, e.g., Martin v. Martin (In re Martin )*, 880 F.2d 857, 859 (5th Cir.1989) (reversing denial of conversion, but stating that in order to prevent conversion, the objecting party must "allege facts which if true would provide an adequate ground to deny the debtor's motion to convert. . . ."); *In re Tardiff,* 145 B.R. 357, 360 (Bankr.D.Me.1992) ("[A] court is not required to allow conversion when doing so would operate to pervert, rather than to implement, congressional policy."); *In re Spencer,* 137 B.R. 506, 511 (Bankr.N.D.Okla.1992) ("[A]ny action taken before this Court, under 11 U.S.C. or any other statute, is always subject to review for bad faith. . . . This includes attempted conversion from Ch. 7 to Ch. 13 under § 706(a)."); *In re Jones,* 111 B.R. 674, 680 (Bankr.E.D.Tenn.1990) (denying conversion where such conversion would be "meaningless"); *In re Calder,* 93 B.R. 739, 740 (Bankr.D.Utah 1988) (denying conversion, stating that "[t]he Court has serious doubts that the debtor will be motivated to pay creditors if the case were converted."); *see also, e.g., In re Higginbotham,* 111 B.R. 955, 963–64 (Bankr.N.D.Okla.1990) (holding similarly in Chapter 7 context).

■ While good faith is not defined in the Bankruptcy Code, the Sixth Circuit's good faith test requires consideration of the totality of circumstances. *See Metro Employees Credit Union v. Okoreeh–Baah (In re Okoreeh–Baah )*, 836 F.2d 1030, 1033 (6th Cir.1988); *Hardin v. Caldwell (In re Caldwell )*, 851 F.2d 852, 858 (6th Cir.1988); *State of Ohio, Student Loan Comm'n v. Doersam (In re Doersam )*, 849 F.2d 237, 238–40 (6th Cir.1988). In particular, the factors laid out in *Okoreeh–Baah* indicate that the bankruptcy court may inquire into "the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13" and "the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealing with his creditors." *In re Okoreeh–Baah,* 836 F.2d at 1032. *Okoreeh–Baah* makes it clear that pre-plan conduct may be considered, *Id.* at 1034, and later decision in *Caldwell* discussed above makes it clear that the debtor's motivations in seeking to avoid the consequences of the conduct are particularly relevant. *Hardin v. Caldwell (In re Caldwell )*, 895 F.2d 1123, 1127 (6th Cir.1990).

■ When examining the Debtors' conduct of failing to report significant assets on the bankruptcy petition, and lying about jewelry and collectibles when questioned about them by the trustee, combined with the Debtors' prepetition conduct of procuring loans through National City Bank by overvaluing their assets and devaluing their liabilities, the court finds little difficulty in determining at this time that no plan proposed by the Debtors can meet the good faith requirements of § 1325(a)(3). *See, e.g., Society Nat'l Bank v. Barrett (In re Barrett )*, 964 F.2d 588, 589–90 (6th Cir.1992) (making § 1325(a)(3) good faith determination at petition instead of at plan presentation).

That being the case, even if the court were to hold that Debtors have an "absolute right" to convert to Chapter 13, this right would be meaningless. Section 1307 states that a creditor may convert a Chapter 13 case to Chapter 7 for "denial of confirmation of a plan under section 1325 of this title." 11 U.S.C. § 1307(c)(5) (1994). The court is not prepared to require the Debtors to submit to an illogical set of conversions that will return them to their present status simply to affirm a rule that is in fact not so absolute. *Accord Finney v. Smith,* 141 B.R. 94, 96–99 (E.D.Va. 1992), *aff'd as modified sub nom., In re Finney,* 992 F.2d 43 (4th Cir.1993) (holding that the debtor had an absolute right to convert from Chapter 7 to Chapter 11, but that the court could *sua sponte* reconvert the

case under § 1112(b) to Chapter 7); *In re Latin Inv. Corp.,* 125 B.R. 327, 328 (Bankr. D.D.C.1991) (same, by motion of party in interest).

█ The actions of the debtors in concealing ownership of the Mazda, attempting to mislead the trustee as to value of personal property and minimizing the values of property can not be condoned. While Congress intended to encourage reorganization, it was to benefit the honest debtor. The Thorntons became honest in this case only after the trustee diligently pursued the truth and their present attorney insisted on accurate schedules. The facts of this case constitute the exceptional circumstances where conversion should be denied. To allow conversion in this case would condone debtors' attempts to conceal assets and mislead a trustee to avoid administration of estate property.

The court, therefore, concludes that under the facts set forth above the debtors' request for conversion should be denied.

### RESPONSIBILITY OF THE DEBTORS

█ Having made that determination, it is necessary for the court to briefly address one further assertion made by the Debtors, that is that they should not be held responsible for representations made by their attorney. Debtors did acknowledge that they are at fault along with the attorney. Even assuming that the misrepresentations on the Debtors' petition were the result of unilateral conduct by the Debtors' first attorney, which is not clear, the Debtors must still be held responsible for the acts of their counsel.

In 1988, the United States Supreme Court rejected the contention that "it is unfair to visit the sins of the lawyer upon his client." *Taylor v. Illinois,* 484 U.S. 400, 416, 108 S.Ct. 646, 657, 98 L.Ed.2d 798, *reh'g denied,* 485 U.S. 983, 108 S.Ct. 1283, 99 L.Ed.2d 494 (1988) (holding a criminal defendant liable for the attorney's failure to manage witness disclosures). In *Taylor,* the Court stated that "[t]he argument that the client should not be held responsible for his lawyer's misconduct strikes at the heart of the attorney-client relationship." *Id.* at 417, 108 S.Ct. at 657. In the context of criminal defense, the Court concluded that "[p]utting to one side the exceptional cases in which counsel is ineffective, the client must accept the consequences of the lawyer's decision...." *Id.* at 418, 108 S.Ct. at 658.

The court feels it appropriate to extend this same rule to the bankruptcy context, where few would argue that considerably less is at stake than in a criminal defense trial. This is especially true in light of the specific duties imposed upon debtors to disclose assets and liabilities under § 521(1) and verify that disclosure under Fed.R.Bankr.P. 1008.

### CONCLUSION

It is the court's conclusion that the debtors have engaged in acts constituting lack of good faith so that their conversion from Chapter 7 to Chapter 13 should not be allowed. Therefore, the debtors' Motion to Convert is Denied.

It is so ordered.